The next case on our calendar is United States v. Gambino-Ruiz. Good morning again, Your Honors. Kara Hartzler, Federal Defenders, on behalf of Mr. Gambino-Ruiz. This case is governed by the unanimous en banc decision in Torres v. Barr. Torres limited the inadmissibility ground at 8 U.S.C. 1182-A-7 to people applying for admission at ports of entry. Unless and until Torres is overruled, that same definition applies to the A-7 cross-reference in the expedited removal statute. Thus, Mr. Gambino-Ruiz's underlying removal order is invalid and his conviction should be vacated. This is a complicated statutory scheme, so I want to just start off by noting the three different categories of inadmissibility grounds we're dealing with. The first one is for people who enter at a non-designated time or place or are present without admission under A-6A. The second is people who lack a valid visa under A-7. And the third is people who use fraud under A-6C. Now, for years, the government has essentially assumed that those first two categories are interchangeable. But we now know after Torres that that's not true. That if you had a reading of A-7 that included everyone in A-6A, it would create surplusage. And that's not how we generally interpret statutes. As a result, the expedited removal statute, which only references A-7, the without a valid visa, and A-6C, the fraud, are the only categories of people who can be put into expedited removal. Because Congress specifically created and chose to not include A-6A, that is a clear statutory clue that people who cross between ports of entry at an undesignated time or place can't be put in expedited removal. I would also like to point to the Amici brief that was filed. And that's another really good reason to show that this is what Congress intended. That basically, if the government were right, what would happen is that this form of relief that Congress created for victims of domestic violence abuse would be completely precluded from getting that form of relief because Congress created an exception in A-6A but didn't create a similar exception in A-7. So because of that, we believe that this underlined removal proceeding was invalid and the court should vacate the conviction. I have a lot of time left, but if the court has no questions at this time, I'll save the remainder of my time. Thank you. Good morning again. May it please the Court. Zach Howe for the United States. The statutory interpretation question in this case is complex. The prejudiced question, however, is very easy. So with the Court's indulgence, I will just spend a minute or two on that before getting into the statutory interpretation question. Here, Mr. Gambino undisputedly would have been inadmissible under 1182-A-6A if he wasn't inadmissible under 1182-A-7. So he was going to be removed from the country no matter what. And he had no plausible claim to relief from removal because he lacked what this Court described in Gonzales-Flores as the most typical equity-supporting voluntary departure. He had no family ties to the United States, he had no long-term residence, and he had no employment in the United States. So all roads led to him being removed from the country without getting any relief from removal. Therefore, he can't establish prejudice under 1326-D-3. Now, my friend on the other side asked this Court to presume prejudice, and they rely on the Valdivia-Flores case for that conclusion. However, Valdivia-Flores doesn't stand for that proposition. Now, I realize this Court has dueling unpublished opinions that go both ways on this issue. The Reyes-Ruiz decision said you can't presume prejudice, and that was decided after Valdivia-Flores. The Mangus case said that Valdivia-Flores does, in fact, govern. I agree, Judge Lee, with your concurrence in Mangus in its entirety, with the exception of the conclusion. In that case, the concurrence said that Valdivia-Flores, to the extent it addressed this issue, did it without analysis, without briefing, accidentally and inadvertently. Respectfully, I would simply say that when a case addresses an issue without analysis or briefing, accidentally and inadvertently, then it's not precedent on the issue at all. And I think this is a one-for-one analog with the Supreme Court's Brecht v. Abrahamson decision. In that case, the Supreme Court said, look, we have applied the Chapman harmless error standard in federal habeas cases in a handful of our past precedents, but we've never squarely addressed whether that standard should apply. So the Court said we're free to address the issue, and it actually went on to apply a different harmless error standard. Well, here it's true that in Valdivia-Flores, the Court, in a single sentence, said that an individual, similarly situated to Gambino, suffered prejudice by being removed on the wrong grounds. But it was simply applying a standard from the LPR context without any analysis or briefing on the issue. So just as in Brecht v. Abrahamson, this Court is free to say that we've never squarely addressed it, and then the Court should address it. And when the Court addresses it, it should say that the plain text of 1326d requires prejudice to be shown, because it says that the validity of a removal order can't be challenged unless all three prongs of 1326d are satisfied. That's why Palomar Santiago from the Supreme Court said every statutory provision in that statute is mandatory. It's also the same conclusion that the Fifth Circuit has reached, that the Tenth Circuit has reached, that this Court has reached in its unpublished Reyes-Ruiz decision, and the First and Tenth Circuit have even reached that same conclusion in the LPR context. We're not even asking the Court to go that far. And then, of course, you have the fact. Going back to Valdivia-Flores, you're making the argument that we should not consider the language there as precedent. But on the other hand, Martinez-Hernandez later on tries to distinguish Valdivia-Flores. So, I mean, was Martinez-Hernandez treating that as potentially precedent? I don't think it really needed to get into the issue. It has one footnote saying Valdivia-Flores wouldn't apply to the prejudice issue in that case because Valdivia-Flores addressed prejudice in a different context or didn't analyze the exact prejudice issue being raised there. I actually think that supports our position here to the extent Martinez-Hernandez says, don't look at Valdivia-Flores for prejudice arguments that weren't addressed in Valdivia-Flores. That's what we're asking this Court to do here. Valdivia-Flores doesn't devote a single drop of ink to what happens to the prejudice inquiry when you have an individual who is undisputedly removable and would have lacked any plausible claim to relief from removal. And, again, I think to interpret Valdivia-Flores as having sub silencio reach to that conclusion, you would have to do so in tension with the plain text of the statute, in tension with the Supreme Court's admonition that all prongs of 13-2060 are mandatory. And, of course, you would have to overlook the fact that this Court's Alfred case recently overruled Valdivia-Flores. And I take the point that it overruled only the categorical approach portion of the opinion and not the prejudice portion. But if you strip out all of the categorical approach portion of the opinion, you're literally left with one sentence. I can read it in its entirety. It's, Valdivia-Flores was therefore prejudiced from his inability to seek judicial review for that order, from that removal. So you literally don't even have context for the therefore. Everything else has been overruled. So I think it would be a big stretch to say that that single out-of-context sentence somehow addressed an issue that was never briefed or teed up. Again, I think you can apply Breck v. Abrahamson, and that is a direct roadmap for how to interpret the precedential value of this decision. So if the Court agrees with me on that, then I think you can affirm on a straightforward prejudice analysis without getting into the weeds of the statutory interpretation. I would like you to interpret the statutory interpretation. If you reach it, then you should conclude not that the meaning of 1182A7 changes in the expedited removal context. That is not our argument. Our argument is simply that the expedited removal statute gives the Attorney General or his designees the authority to treat those who enter away from a court as if they had entered at a court, and therefore they would become amenable to inadmissibility under 1182A7. We think that interpretation is supported by the text of the expedited removal provision itself, 1225E1A1, as well as the designation provision, 1225E1A3, as well as the common use of fictive states in the immigration context, both in the constitutional immigration context and the statutory immigration context, and both as a substantive matter and a procedural matter. So I'm happy to walk through each one of those points to explain why I think they support our position here. So beginning with the expedited removal provision, it lays out two groups of aliens who are subject to removal in expedited removal proceedings. The first is aliens arriving in the United States. That necessarily means aliens arriving in a port who are inadmissible under 1182A7 or 1182A6C. And then the second group is aliens described in Clause 3. So that's aliens designated by the Attorney General who necessarily entered away from a port who are inadmissible under 1182A7 or 1182A6C. Now, if my friend's interpretation were correct, then Congress would have been creating an empty set because aliens described in Clause 3 who are inadmissible under 1182A7 would necessarily include no aliens because 1182A7 only applies to those who enter at a port of entry. So if this power to designate aliens who entered away from ports and treat them as if they entered at a port didn't exist, then Congress would have been creating an empty set in the statute. We don't think that's a comprehensible way to write the statute. In fact, what Congress would have said would simply be that the immigration officer shall remove aliens who are inadmissible under 1182A7 or arriving aliens or aliens designated in Clause 3 who are inadmissible under 1182A6C because that's the only statutory provision where it would matter if you're dealing with an arriving alien or an alien designated in Clause 3. So I think that provision supports our interpretation. And then if you turn to the actual designation clause itself, 1225B1A3, Congress uses sweeping language to describe the authority that the Attorney General has. It says that the Attorney General can designate in his sole and unreviewable discretion any and all aliens who are not admitted, paroled, or present for two years, and that it may modify that designation at any time. That sweeping grant of authority would tend to suggest that the Attorney General can, in fact, treat someone who enters away from a port as if they entered at a port for purposes of the statute. And then finally, as I mentioned, fictive states are common in immigration law. They're common in constitutional law, as the Thursigian opinion from the Supreme Court confirmed in treating those who entered away from a port as if they had entered at a port for due process purposes. They're common in statutory law. And, in fact, just one subsection earlier in the expedited removal statute, you see one of these fictive states. 1225A1 imposes a fictive state for procedural purposes. It treats those who enter away from a port as if they are making an application for, or as if they are applicants for admission, I should say, which is a procedural designation. So it's not plausible that Congress sort of tangled this fictive state in front of the Attorney General's eyes one subsection earlier, then used this broad, sweeping language to describe the Attorney General's authority, while intending sub silencio, to actually deny him the power to impose one of these fictive states. And then finally, I should say that fictive states also appear not just in procedural terms, but in substantive terms. So if you look, for example, at this court's Ocampo-Duran decision, there the court said that when an individual has a status adjustment to that of an LPR, then they are treated as if they are an admitted alien. That is a procedural, or excuse me, that is a substantive change in their designation, because that means it meant in Ocampo-Duran that the individual was amenable to removal in administrative proceedings under 1227 for having committed an aggravated felony after having been admitted. So it had substantive effects there. So again, these fictive states are extremely common in immigration law. There's no reason to suspect that Congress intended to limit the Attorney General's power to impose one here. And that's particularly true given that Congress routinely limits the Attorney General's discretion to enforce immigration laws. We collect a bunch of laws at footnote 3 of our brief. Where you find these limitations, you don't find any of those limitations in this law. Now, I should say, if you find that there's any ambiguity, then we would submit that you should simply defer to the Attorney General or his designee, the DHS Secretary's interpretation here, which would lead to the same result. Now, I'm happy to address a few of the points that my friends on the other side raised. First, with respect to the Torres case, the Torres case expressly reserved the issue that we are dealing with here in footnote 13 of the opinion. So it's hard to say that it is dispositive when the en banc court is telling us that it is not addressing this issue. And it's easy to see why it's not addressing this issue. There, it's only dealing with formal removal proceedings. So it's only interpreting 1182A7. It doesn't have any interpretation of 1225B1A1, 1225B1A3, the use of fictive states, or anything related to the Attorney General's designation power. This case also raises none of the superfluidity problems related to the Marianas Island's exception to an admissibility that occurs in formal removal proceedings. I'll have to walk through why that is the case. But suffice it to say, it's because for a Marianas Island guest worker to be removed in expedited removal proceedings, they would have to be not admitted, which may not be the case if you're a guest worker who's been allowed into the Marianas Island. So they may fail on that prong. They'd have to be not paroled. They'd have to be not present for two years, which, again, wouldn't have applied to Tort as she was in the Marianas Islands for a decade. And they would have to fall within a category designated by the Attorney General, which at the time meant you had to be there for less than 14 days and found within 100 miles of the border. So that provision still has meaning. There's no superfluidity problem. You can say the same of the VAWA self-petitioner exception in 1182A6C. For those individuals to be subject to expedited removal, they would have to be subject to, you know, they would have to not be admitted, which may not be the case because 8 U.S.C. 1255A gives the Attorney General the discretion to treat self-petitioners as if they are admitted. So they may fail there. They would have to be not paroled. They would have to be not present for two years. They would have to be found within 14 days, and they would have to be found within 100 miles of the border. So, again, the superfluidity problem wouldn't exist. And I should note that the amicus brief and my friend on the other side haven't identified a single example of a VAWA self-petitioner who has actually been subjected to expedited removal. So as far as I know, this isn't a problem that has ever actually appeared. You're saying it's discretionary. So is that your point, that expedited removal is discretionary, and therefore victims of domestic violence don't have to proceed with that? I'm saying it's discretionary. That's part of it. It is discretionary, so they don't have to proceed with expedited removal. But it's also that it can't even apply. You can't even use your discretion to apply it unless the individual is not admitted, not paroled, not present for two years, and subject to a group designated by the Attorney General through an affirmative exercise of that discretion. So you have all these different hoops you have to jump through to even get to the question of, are we going to exercise our discretion to apply expedited removal? So I see I'm out of time. I'm happy to answer any additional questions. If not, I would ask the Court to affirm. Thank you. I have another one. Thank you, Robert. I'd just like to clarify something about the VALWA relief and the Amici brief, because I think there's a little bit of confusion on this. The argument is not necessarily that people who would be domestic violence victims would be subject to expedited removal, although I think that could be a concern. The argument by Amici, and that we agree with, is that actually those people would not be eligible for VALWA relief at all. And the reason is because to be able to apply for VALWA relief, you can't be inadmissible unless you are only admissible under A6A. So it's not a matter of could you put a domestic violence victim into expedited removal. It's would that person be able, down the road, to get that form of relief. And under the government's reading of the statute, unfortunately, there would be no way for tens of thousands of victims to get the kind of relief that Congress expressly intended to create for them. So that's the real issue, and that's why it cuts against the government's reading of the statute. I would like to go to the merits of the statutory interpretation of the ER statute, and I want to point to four specific comments. Let me understand your position on prejudice. Sure. So I'll start with the Valdivia Flores, Your Honor. I think there's several things that I respectfully would like to correct in terms of the government's representation of Valdivia Flores. The government repeatedly says that it was never briefed there. In fact, it was briefed. What would have been your other plausible grounds for relief? Well, Your Honor, I think to get to plausible grounds of relief, what we'd have to do is we'd have to envision a hypothetical different removal proceeding that the person would be put into, and then we'd have to envision a hypothetical form of relief. And then we'd have to envision what were the equities that were never discussed below. So we don't think that that's part of the reason why I think Valdivia Flores rightly said, look, when a person is put in the wrong type of removal proceeding, that's prejudicial. But going to Your Honor's question, I think if Mr. Gambino-Ruiz were not in expedited removal, he might have been put before an immigration judge, and he would have perhaps applied for voluntary departure. So at a minimum, if this court believes that we do make some sort of equities-based determination, there was no determination on that form of relief before the district court. And so at a minimum, we would ask this court to remand, as it does in every case where there was no equities-based determination. But you're not prepared to give us a preview as to what kind of equities he might have raised. There's nothing in the record that I can really point to, Your Honor. But there is some evidence that he didn't have any relatives in the United States. He had a prior criminal record. Well, the government's asserted that, but there's no evidence in the record either way. In fact, I think it's entirely possible that he does have extended family in the United States, but there's nothing in the record I can point to, and that's why remand is so important. So I will also go to the issue of Valdivia Flores. And I think while my friend across the aisle would say that Your Honor's last sentence was not correct in terms of whether Valdivia Flores is binding, we think it was correct. And the reason is because, as I've pointed out, it actually was briefed. Now, the government in Valdivia Flores did not brief it. They actually forfeited the issue. But the mere fact that the government chose to do so does not mean that it was not decided. It does not mean that Valdivia Flores is not binding. And the reason it's binding is because this is the exact type of situation as in there, because we have a person who was not removable as charged, and as a result they were put in the wrong type of removal proceedings. It's a little bit different. I mean, I don't know what to make of Valdivia Flores. There's no real explanation there. But one way to distinguish it is in Valdivia Flores they were trying to remove the person because of, I think, crime of violence. The predicate act ultimately was not a crime of violence, and therefore they would have had to bring another charge saying the person is here unlawfully. Here, this isn't involving an act of crime of violence or anything like that, aggravated theft or anything of that sort. The person is here unlawfully, whether it's under 1182-86 or 1182-87. So there's no notice issue. There's no different type of evidence. It's the exact type of evidence you would use in both 1182-87 or 86. So it seems like, to the extent that Valdivia Flores has special value, we should read it very, very narrowly. And I think you could distinguish it here. I don't see anything that is a distinction, that is a difference without a distinction or whatever that phrase would be implied here. And the reason is this, Your Honor. In both Valdivia Flores and in this case, you have a person who is not an LPR, and you have a person who is charged with a ground of removability that was not, in fact, correct. They should have been put in a different type of removal procedure. There's something to be different in Valdivia Flores, again, as a crime of violence versus unlawful presence here. Here, whether it's 1182-86 or 1182-87, it's the person is here unlawfully. So there isn't the same notice issue or evidentiary issue. I think there are a lot of problems, for instance, in terms of a person's in expedited removal when they shouldn't be is a much lower standard of rights. They don't have, you know, arguably they don't have a right to an attorney. They don't have a right to have a lawyer present. They don't have a right to a lot of rights to present witnesses, to present. They're just severely curtailed rights. If anything, I think there was more prejudice here than there was in Valdivia Flores because of those curtailed rights. At a minimum, Your Honor, we just don't see that this court is not bound by Valdivia Flores. I would also just point out, as my last point on prejudice, that even if this court disagrees with us on prejudice, we have made the separate argument that under this court's en banc decision in Bastido Hernandez, because this was a jurisdictional issue of whether the immigration officer had the right to or not have the authority to issue this order of removal, that is a separate way that we would be able to challenge this as an element of the 1326 conviction. And that doesn't require prejudice showing. So even if the court agreed somehow with the government on prejudice, first I think we would remand for a determination of the equities. But at a minimum, the court would also need to deny our claim as to the Bastido Hernandez route. So I would like to move and I would like to point to the four places in the statute where the plain text completely forecloses the government's argument as to the expedited removal. I'm going to start with B1A. And there the operative language is this. If an immigration judge determines that a non-citizen who is arriving in the United States or is described in Clause 3. So we have two categories of people arriving or described in Clause 3. And then on top of that, the immigration officer has to decide if they are inadmissible under A6C or A7. In other words, it is not an or, it's an and. So you have to be both under Clause 3 and removable under one of those grounds. And that's where TORS comes into play. And that's where... Wait a minute. I'm a little puzzled here. Sure. If an immigration officer determines that an alien who is arriving in the United States or is described in Clause 3. So arriving in the United States, that is defined in 1225A1. Right? Sure. And your client is arriving in the United States. Under 12A1. A1. Arguably, yes. Certainly. Okay. I don't think it's arguably, but... Certainly. He's arriving in the United States. Okay. So he's arriving in the United States and he's inadmissible under either A6 or A7. Correct. Your client was inadmissible at least under A7 because he was without proper documents. But I think that's exactly where TORS comes. Because TORS says... She had been in the court in the United States for 10 years. She was not arriving at a border. She was not coming across the border as your client was. Your Honor, I would like to basically read the language from TORS that said that TORS only applies to people who are specifically applying for admission at that moment of a port of entry. And there is simply no way under plain text to... Your client is applying for admission at a port of entry. That's 1225A1. Not at a port of entry. No. But that's right. But we've said that this is the fictive state that you're opposing counsel has arrived at. So you're arriving in the United States, whether or not at a designated port of arrival, shall be deemed for purposes of this chapter an applicant for admission. What's ambiguous about that? Well, Your Honor, there is no... So then we go to the expedited removal statute. And there is actually no... That limitation of A7 that TORS gave a very specific definition of still imposes an additional limitation on that. In other words, sure, say that this person is somehow coming to the United States. The only people who are subject to expedited removal are the people who are defined under A7 in TORS, which is people who are at a port of entry submitting a formal application. That then makes hash out of 1225A1. The 1225A1 says whether you're coming to a port of entry or whether you have crossed the border someplace else outside of a port of entry, you are going to be deemed to be an applicant for admission. It's as if you came to... We're going to treat you very kindly because we're going to treat you as if... And this is very important in the asylum context. Because we have a prior administration that tried to prevent people from coming across outside of a port of entry and applying for asylum. I think the confusion, Your Honor, if I could clarify, is everyone who's in any sort of inadmissibility proceedings is considered an applicant for admission. But not everyone is always subject to the grounds of inadmissibility in A7 and A6C. So in other words, if I am caught one year and 10 miles inside the United States, I'm an applicant for admission. But that doesn't mean that I am automatically then inadmissible under A7. And that's exactly what TORS has said. Because in TORS, the person had been in the United States for quite a while. But TORS said we only apply A7 to people at the moment that they're at the port of entry applying for admission. Which is what 1225A1 tells us. If you are caught outside of a port of entry crossing the border, we're going to treat you as though you are an applicant for admission. And now all we have to do is look at A7 and ask, did you have documents when you came across the border? Your answer was no. I think if that were correct, TORS would have come out differently. And so unless... I mean, TORS just seems to me to have nothing to do with the case. I mean, it's just such a very, very different situation. We don't see how there's any way under the government's reading and under what I believe that Your Honor is saying, if that were right, TORS would have come out differently. Because we don't define A7 differently for immigration removal proceedings for people in the Northern Mariana Islands versus people who have been caught, you know, several miles inside the United States. And, in fact, TORS itself said this is an open question at a minimum. Your Honor, I think there's other places that we pointed out in our brief where the plain language of the statute forecloses this interpretation. At a minimum, I would point to the language of A6A1, which says that there is a difference between a person who is present in the United States without being admitted and one who arrives at a non-designated time. And the expedited removal statute only talks about people who are present without admission, not people who entered at an undesignated place. There are places throughout the statute that this forecloses the government's argument. So under your reading, then, of TORS plus the statutory language, an expedited removal can only occur at a port of entry. Is that right? It could occur at a port of entry for someone who's inadmissible under A7. It could apply anywhere inside the United States to someone who's inadmissible under A6C. But it can't apply to someone who's caught coming across the border outside of a port of entry? If that person, for instance, was also inadmissible for using a fraudulent document, yes. That's A6. If I'm just talking about an A7, I'm without documents coming across the border. If I cross at the port of entry, then I'm subject to expedited removal. If I'm outside of the port of entry, then I'm not. Why would anybody ever bother to come through a port of entry again? Your Honor, I think there— Isn't this next hash of the statute? Your Honor, I think it's actually the opposite. I think there are so many places in here that we pointed to in our brief that the plain language of the statute actually supports our position. And I'll—if the Court would just indulge me for a moment. I think it's entirely possible that when Congress was creating an expedited removal statute, there were Supreme Court decisions saying that a person who was at a port of entry could constitutionally be denied a hearing, but there was no case saying that a person who was inside physically the United States. And I think Congress was very concerned about putting people who entered at undesignated places into expedited removal because they were worried it could be struck down as unconstitutional. So there's a reason why Congress wrote it that way. There's a reason Congress didn't include A6A. It could have, but it didn't. Thank you for your generosity of the time, Your Honor. Thank you both.
judges: Parker, BYBEE, LEE